# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| McAFEE ENTERPRISES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 16-cv-2618 |
| | ) | Judge Thomas M. Durkin |
| ASHLEY ENTERTAINMENT | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff McAfee Enterprises, Inc. brings this action against Defendant Ashley Entertainment Corporation for alleged infringement of Plaintiff's patented drum stroke counting machine, United States Patent No. 6,545,207 ("the '207 patent"). R. 1. Plaintiff's patented product, which makes use of the '207 patent, is called the "Drumometer" (also referred to herein as "the patented product"). Plaintiff alleges Defendant's product—the iRock Digital Practice Drum Pad (the "iRock" or the "infringing product")—infringes on the '207 patent. *Id*. Defendant has moved for summary judgment, arguing that the complaint should be dismissed as moot. Defendant's theory is that Plaintiff cannot establish a right to recover either damages or injunctive relief. As a result, Defendant contends, "this case has effectively become moot and should be dismissed in its entirety." R. 16 at 9. In the alternative, Defendant states, "the court should strictly limit discovery proportional to any remaining, unresolved issues." *Id*. For the reasons that follow, the Court denies Defendant's Motion for Summary Judgment without prejudice.

## LEGAL STANDARD

A court appropriately grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, "the mere existence of some alleged factual dispute between the parties will not defeat [a] . . . motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is a fact which "might affect the outcome of the suit." *Id.* at 248; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is proper when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case"). A genuine dispute occurs when "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Specifically, compliance with the patent marking statute "is properly decided upon summary judgment when no reasonable jury could find that the patentee either has or has not provided [either] actual [or constructive] notice" to defendants of their infringement. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

## BACKGROUND

In 2003, the U.S. Patent and Trademark Office issued Plaintiff Patent No. 6,545,207 for its Electric Drum Stroke Counting Machine. R. 1 ¶ 3. Plaintiff later used the '207 patent to develop and sell a drum stroke counting machine called

the Drumometer. The Drumometer measures the speed at which a drummer plays by counting the number of times the drummer can strike a sensor with drum sticks within a limited amount of time. R. 1-1. Plaintiff marked both the Drumometer itself and the Drumometer's box with the word "PATENTED," but did not place the patent number on either. R. 16-1; R. 16-2. Instead, Plaintiff placed the patent number on the instruction manual included inside the box. R. 16-3.

In 2010, Plaintiff granted a license to Ahead Products, Inc. to use the '207 patent for a similar product called "the Ahead Metronome Pad" (also referred to herein as "the licensed product"). R. 21-2 at 2 (¶ 4). Shortly thereafter, Ahead Products, Inc. began selling the licensed Ahead Metronome Pad. *Id*. Ahead Products, Inc. marks the '207 patent number on the back of the Ahead Metronome Pad. *Id.* at 3 (¶ 5).

At some point, Plaintiff learned that Defendant was selling a product called the iRock Digital Practice Drum Pad, which includes many features similar to those of the Drumometer, such as a strike sensor, timer, and strike counter. R. 1 at ¶¶ 6–15. Plaintiff thereafter filed this infringement lawsuit. On June 8, 2016, Defendant moved for summary judgment, claiming that Plaintiff failed to comply with the marking requirements for the Drumometer or its packaging, as set forth in 35 U.S.C. § 287(a). R. 16 at 1. Specifically, Defendant claims that 35 U.S.C. § 287(a) requires both the word "patented" and the corresponding patent number to appear on either the article or its package, and that Plaintiff's failure to put the patent number on either the patented product or the box means it has not provided

3

constructive notice of its patent. In addition, Defendant contends, Plaintiff concedes that it did not provide Defendant actual notice of Plaintiff's claim of infringement until Plaintiff filed the complaint in this case. R. 16 at 2, 8; R. 21 at 2. Having failed to provide either constructive or actual notice prior to the filing of the complaint, Defendant argues, Plaintiff cannot recover for any pre-filing damages it may have suffered. Finally, Defendant represents that, once Defendant received notice of the infringement through the filing of the complaint, it stopped selling the infringing product. R. 16 at 8; R. 16-5 ¶ 4, 6. Therefore, Defendant contends, Plaintiff has not suffered any damages after the complaint was filed and is not entitled to injunctive relief. In short, Defendant argues, because Plaintiff cannot recover any damages and is not entitled to an injunction, the Court should dismiss Plaintiff's lawsuit as moot. R. 16 at 5–9.

## DISCUSSION

Defendant's summary judgment motion asks the Court to resolve the following issues:

### A. WHETHER PLAINTIFF PROVIDED CONSTRUCTIVE NOTICE OF ITS PATENT RIGHTS BY MARKING THE PRODUCT IN COMPLIANCE WITH SECTION 287(a)

The marking statute provides as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one

4

> or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). Pursuant to this provision, a patentee's right to recover damages in an infringement suit is limited to those acts of infringement that occurred after the patentee gave the alleged infringer "'notice of infringement.'" *Gart,* 254 F.3d at 1345 (quoting § 287(a)). The statute permits either constructive or actual notice. *Id.* Constructive notice is accomplished by marking the article or its packaging in compliance with the statute. *Id.* Defendant argues that Plaintiff did not comply with the marking requirement, and therefore failed as a matter of law to give constructive notice of its patent. As a result of this failure, Defendant argues, Plaintiff cannot recover damages for Defendant's infringing sales prior to the date this lawsuit was filed.

### 1. WAS PLAINTIFF REQUIRED TO MARK THE PATENTED PRODUCT WITH THE PATENT NUMBER?

The purpose of the marking statute is to provide notice to the public concerning "the status of the intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989); *see also Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 397 (1936) (observing that the notice requirement is designed "for the information of the public"); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446

(Fed. Cir. 1998) ("to provide notice *in rem*"); *Rutherford v. Trim–Tex, Inc.*, 803 F. Supp. 158, 161 (N.D. Ill. 1992) (discussing the Supreme Court's "long-standing focus on the notice effected by the method of marking the patented article rather than on the precise mechanistic compliance with the statute"). For this reason, the marking statute generally is construed to allow some discretion in the patentee to alternatively mark its product (by marking the product's packaging, for example), particularly when the product in question is small. *See Sessions v. Romadka*, 145 U.S. 29, 50 (1892) ("It is not altogether clear that the stamp could not have been made upon the smaller sizes [of truck catches]; but, in a doubtful case, something must be left to the judgment of the patentee, who . . . affix[ed] a label to the packages in which the fasteners were shipped and sold."). This is true regardless of whether it is physically possible to place the patent number on the article itself. *See Metrologic Instruments, Inc. v. PSC, Inc.*, 2004 WL 2851955, at *20 (D.N.J. Dec. 13, 2004) ("a sizable line of cases [ ] stand for the proposition that placing patent numbers on the associated packaging complies with the marking statute even though it is physically possible to place the patent number on the article itself").

Defendant argues that strict compliance with the statute by marking the product itself nevertheless is required when the product has markings or printing on it already (in this case, the word "PATENTED"). The statute provides that marking the product itself is not required "when, from the character of the article, this can not be done." 35 U.S.C. § 287(a). Courts have held that this language does not mean that it must be physically infeasible to mark the product itself, and that,

6

instead, it also includes situations where feasibility of marking is called into question for other reasons as well. *See, e.g., Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 689 F. Supp. 2d 929, 946 (S.D. Ohio 2010) (agreeing with principle that "[a]lternative marking of the package may sufficiently comply with the statute when there is some reasonable consideration presented for not marking the article due to physical constraints *or other limitations*, or, *for reasons that go to the very purpose of the statute*," and, "after careful consideration," declining to adopt "a hard and fast rule" that would limit the circumstances under which alternative marking would be permissible) (internal quotation marks and citation omitted) (emphasis added). Courts have used a variety of factors to decide whether a patentee may be excused from marking the product itself, including "(1) the size of the product, (2) other practical considerations, like the cost of marking the product itself, rather than marking the packaging, (3) industry norms for marking similar products; and (4) whether an alternative form of marking would provide users with adequate notice of the patent." *Stryker Corp. v. Zimmer Inc.*, 2012 WL 6821683, at *3 (W.D. Mich. Nov. 29, 2012) (citations omitted); *see also Heraeus Electro-Nite Co. v. Midwest Instrument Co.,* 2007 WL 3407128, at *3 (E.D. Pa. Nov. 14, 2007) ("Courts consider the size and other physical properties of the patented article, as well as defacement, custom of the trade, expense, and other reasonable factors when determining whether alternative marking (*i.e.*, marking a product's packaging) is sufficient.") (internal quotation marks and citation omitted).

Viewing the evidence in the light most favorable to Plaintiff, and in the absence of any authority directly on point, the Court is not satisfied that this question is appropriate for summary judgment, at least not in the early stages of litigation before discovery has been completed. Several important factors are either disputed or have yet to be ascertained. These factors include, but are not limited to, the relative size of the patented product, the processes required to affix the statutory marking on the patented product, the costs associated with these processes, the appearance of the patented product with the statutory marking, and industry practices. The balancing of these factors is a job best suited for a later time. Although neither party presented evidence on these factors, Defendant, as the moving party, bears the initial responsibility of identifying the portions of the pleadings, depositions, affidavits, and other material that show there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. It is not until after the moving party has met that initial burden of proving a prima facie case entitling it to summary judgment that the non-moving party, Plaintiff in this case, is required to rebut that prima facie case with evidence of a disputed fact issue for trial. *Id.* Because Defendant has failed to present evidence on the various factors courts consider in determining whether the product itself must be marked with the patent number, it has failed to establish that it is entitled to summary judgment at this time.

The Court must deny summary judgment on this issue for another reason as well. Plaintiff has presented evidence that its licensee, Ahead Products, Inc.,

marked a similar product with the patent number. Defendant failed to address Plaintiff's argument that Defendant obtained constructive notice of Plaintiff's patent through its licensee having marked its product with the patent number in compliance with the statute. Instead, Defendant argued that the only relevance of this information is that it shows it was feasible for Plaintiff to comply with the statute by marking its own product with the patent number as well with the word "PATENTED." But Defendant misses the point. If it is undisputed Ahead Products, Inc.'s marking of the licensed product complied with the statutory marking requirements, then Plaintiff presumably could recover damages for Defendant's infringement of Plaintiff's patent from at least the date on which Ahead Products, Inc. began selling the Ahead Metronome Pad with the patent number marked on it. *See Bowling v. Hasbro, Inc.,* 490 F. Supp. 2d 262, 277 (D.R.I. 2007) (suggesting that compliance with the marking statute may "turn[ ] on a third party's [*i.e.,* licensee's] actions or inactions"); *cf. Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 185 (Fed. Cir. 1994) ("A licensee who makes or sells a patented article does so 'for or under' the patentee, thereby *limiting* the patentee's damage recovery when the [licensed] patented article is *not* marked") (quoting 35 U.S.C. § 287(a)) (emphasis added).

The legal issue is whether an alleged infringer can receive constructive notice of the plaintiff's patent by the proper marking by a licensee on its licensed product which uses the plaintiff's patent. Logically, it makes sense that Plaintiff could rely

on its licensee for constructive notice. But since neither party has addressed this legal question in the briefing, the Court will not resolve it at this time.

### 2. DID PLAINTIFF COMPLY WITH THE ALTERNATIVE MARKING REQUIREMENTS OF THE STATUTE?

Defendant argues that even if the statute is read to excuse Plaintiff from marking the product directly, Plaintiff still failed to comply with the statutory alternative marking requirements for constructive notice. The statute provides as an alternative to marking the product directly, that the patentee may satisfy the marking requirement for constructive notice "by fixing to [the patented products], or to the package wherein one or more of them is contained, a label containing a like notice." It is undisputed that Plaintiff marked the box in which the patented product is contained with the word "PATENTED," but did not include the patent number on that box, and that the only place where the patent number appears is on the instruction manual included in the box with the patented product. The question is whether including the patent number on the instruction manual satisfies the statutory language of "fixing to . . . the package wherein one or more of [the patented articles] is contained, a label containing a like notice."

While Defendant cites to a New Jersey district court case, *Metrologic Instruments, Inc.,* 2004 WL 2851955, for the argument that including the patent number on the instruction manual does not satisfy the alternative marking language of the statute, other district court cases, including one from this circuit, suggest otherwise. *See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.,* 891 F. Supp. 751, 829, 830 (E.D.N.Y. 1995) ("disagree[ing] with the plaintiff's contention

that by distributing literature containing the patent mark it met the statute's marking requirement," because, among other things, there was no evidence that the literature "was placed *in the packaging* of the Omniflex that was distributed to vendors and end-users") (emphasis in original), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996); *Calmar, Inc. v. Emson Research, Inc.,* 850 F. Supp. 861, 868 (C.D. Cal. 1994) (noting that § 287(a) may be satisfied by "including something with the packages in which the patented articles are shipped which would indicate the article's patent number"); *Rexnord, Inc. v. Laitram Corp.*, 1988 WL 141526, at * 41 (E.D. Wis. Jan. 28, 1988) (holding that a patentee complied with the marking statute "[w]here the Laitram '141, '949 and '341 products are marked, where installation instructions bearing the patent notices were shipped in each box, and where Rexnord was expressly advised and appreciated that the products were patented").

*Metrologic Instruments* has been cited for the general principle that an instruction manual enclosed in the package containing the patented product does not satisfy the marking statute. *See, e.g., Universal Electronics, Inc. v. Universal Remote Control, Inc.,* 34 F. Supp. 3d 1061, 1097 (C.D. Cal. 2014); *U.S. Cosmetics Corp. v. Greenberg Traurig, LLP*, 2007 WL 980148, at * 4 (D.N.J. Mar. 28, 2007). Nevertheless, the court's reasoning in that case does not necessarily equate to a blanket rule of law. The *Metrologic* court acknowledged that strict compliance with the statute was not necessarily required so long as the purpose of the statute of providing notice to the public of patent coverage is satisfied. But the court held that the patentee in that case failed to provide adequate notice because "[a]ll that was to

11

be found on [the] packages were labels stating 'See User's Guide for Patent Coverage.'" *Metrologic Instruments, Inc.,* 2004 WL 2851955 at *21. That statement did not definitively tell the public whether a patent existed or not. Here, by contrast, the box containing the patented product provided more notice because it was marked with the word "PATENTED," thereby clearly informing the public that a patent on the product existed. Similarly, the patentee in *Metrologic* apparently omitted any marking of any kind on the product as well. *See id.* at *20 ("it is undisputed that after December 1999, Metrologic stopped marking the number of the #342 patent directly on its covered products . . . and replaced the patent number with the phrase 'See User's Guide for Patent Coverage'"). Here, the patented product also was marked with the word "PATENTED." Being alerted by the markings on the box and the product itself that the product indeed was patented, a buyer of the product would only need to examine the instruction manual enclosed with the product to find the patent number. Whether this was adequate notice under the statute presents a slightly different factual question than the one before the *Metrologic Instruments* court where there was no notice outside the instruction manual that a patent even existed.[1]

---

[1] The *Metrologic Instruments* court distinguished *Rexnord* because, in holding that the instruction manual satisfied the alternative marking provision, the *Rexnord* court cited to the fact that the patented "products were marked with some but not all applicable patent numbers." *Metrologic Instruments, Inc.*, 2004 WL 2851955, at * 21. Nevertheless, the only place where the one patent number in question was disclosed in *Rexnord* was on the enclosed instruction manual, and yet that court still held constructive notice was effected as to that patent number. Thus, *Metrologic Instruments* and *Rexnord* together support the view that a court should look to see if there are other reasons why including the patent number on the

12

In any event, the *Metrologic Instruments* court's reasoning was that "the statute contemplates that the packaging is the next most logical place [after the product itself] for effective notice of the existence of the patent," and therefore that "marking the user's guide is yet another step removed from . . . that which the explicit language of the marking statute contemplates." *Metrologic Instruments, Inc.,* 2004 WL 2851955 at *21. But this analysis does not properly account for the actual statutory language, which does not require that the required information for the alternative marking option be placed directly on the package but instead states that it may be placed on a "label," which is "fix[ed] to" either the product itself or the package. 35 U.S.C. § 287(a). It has been held that this language is satisfied either when a tag is hung from the patented product, *see Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 494 n. 9 (D. Minn. 1980), or when an adhesive label is placed directly on the product, *Grand Overseas, Inc. v. Dollar Gen. Corp.*, 2013 WL 11522059, at *2 (E.D. Tex. Aug. 22, 2013). Similarly, a tag attached to the packaging, or an adhesive label placed directly on the packaging, would suffice. *See* 35 U.S.C. § 287(a). The question is whether, by using the word "label" or the term "fixed to," Congress intended to restrict or limit the manner in which constructive notice was to be provided, even if doing so might lead to hyper-technical distinctions

---

instruction manual might be considered reasonable notice under the particular facts before it. In *Metrologic Instruments,* there were no other factors suggesting sufficient notice was given. But, in this case, the markings of the word "PATENTED" on the product itself as well as on the box would serve a similar function as the marking of other related patents discussed in *Rexnord*, such that including the patent number on the instruction manual here, as in *Rexnord*, may be adequate.

between what constitutes compliance and what does not. The alternative view would be that Congress meant for the words employed in the statute to be interpreted flexibly (*e.g.*, a "label" might include an instruction manual, and "fixed to" might encompass placing something inside of the box) so long as the statutory goal of notice is reasonably likely to be achieved. The *Metrologic Instruments* court did not undertake that analysis, and therefore the Court does not necessarily find that opinion to be persuasive here.

In the end, "[c]ompliance with the marking statute is a question of fact." *Stryker Corp*, 2012 WL 6821683, at * 2. Thus, summary judgment is appropriate only if no reasonable factfinder could find compliance. *Id*. The Court cannot say based on the current factual record that a jury could not reasonably conclude that Plaintiff's method of marking the product and box with the word "PATENTED" and enclosing inside the packaging an instruction manual that provides the patent number fails to satisfy the notice requirement of the marking statute. The Court also notes that Plaintiff obtained a legal opinion which stated that including the patent number on the enclosed instruction manual complied with the statute. While good faith reliance on a legal opinion probably would not excuse non-compliance with the statute, the existence of the legal opinion is sufficient reason to look further into this issue before making a ruling, particularly given that Defendant's summary judgment motion was filed prior to the completion of discovery. It being apparent that factual issues may be involved, depending on what the proper standard or test is under the alternative marking provision, the Court believes that

a more fully developed factual record and briefing is required. Without in any way ruling on what the proper standard or test is under the alternative marking provision, the Court defers its decision on this issue at this time.

### B. WHETHER A DISPUTED ISSUE OF FACT EXISTS REGARDING WHETHER PLAINTIFF CAN RECOVER DAMAGES BASED ON DEFENDANT'S ACTUAL NOTICE

Defendant's mootness argument also depends on a finding by the Court that Plaintiff will be unable to establish a basis for recovery of damages after Defendant had actual notice of its infringement. This argument, in turn, raises two issues: (1) whether Defendant had actual notice prior to the filing of this lawsuit; and (2) whether Defendant made any infringing sales after this lawsuit was filed.

#### 1. PRE-FILING NOTICE

Plaintiff admits that Defendant did not have notice of Plaintiff's infringement claim until this lawsuit was filed. R. 21-1 at 3 (¶ 11). But Plaintiff contends that notice of Plaintiff's infringement claim is not the same as notice of the existence of Plaintiff's patent. Plaintiff argues there is a disputed issue of fact on the second notice question.

The Seventh Circuit has said that the actual notice requirement is satisfied where the "accused infringer [ ] receive[s] actual notice of the specific patent which he is alleged to infringe." *Smith v. Dental Prods. Co.*, 140 F.2d 140, 152 (7th Cir. 1944). Other case law, however, holds that the notice must be "of the infringement." *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 536-37 (D. Del. 2010) ("Mere knowledge of the patents in suit is insufficient to place

15

Superior Essex on notice of infringement, as Belden must show 'the affirmative communication of a specific charge of infringement by a specific accused product or device.'" (quoting *Amsted Indus.,* 24 F.3d at 187)).

The parties did not address this issue and therefore the Court declines to rule on it at this time. The Court notes, however, if the relevant inquiry is notice of the infringement, then Defendant would be entitled to summary judgment on this issue because Plaintiff concedes the Defendant did not receive notice of the infringement until after the lawsuit was filed. But if the relevant inquiry is notice of the existence of Plaintiff's patent, Defendant's declaration that "prior to this litigation, Ashley was not aware of the existence of" Plaintiff's patent, R. 16-4 at 2 (¶ 6), would not be sufficient to establish a right to summary judgment. This statement does not establish as a matter of law lack of prior actual notice because the declarant does not state the basis for his personal knowledge regarding what Defendant, which is a corporation, knew or did not know about Plaintiff's patent. In addition, Defendant provided no legal argument regarding what the Court should look at in determining the knowledge of a corporation. Finally, Plaintiff has requested additional time to conduct discovery to challenge the declaration. Since Defendant filed its summary judgment motion before discovery was completed, the Court believes Plaintiff would be entitled to take such discovery should the relevant legal issue be whether Defendant had actual notice of Plaintiff's patent as opposed to Plaintiff's claim of infringement.

### 2. POST-FILING SALES

Defendant argues that Plaintiff cannot establish damages after Defendant received actual notice of the infringement through the filing of this lawsuit because Defendant immediately stopped selling the infringing product. While Defendant states that it removed the iRock from sale on its website, R. 16-4 ¶ 11, Plaintiff asserts that Defendant continued selling the iRock because Plaintiff's counsel bought an iRock from Amazon.com on May 31, 2016, R. 21-1 ¶ 12. Defendant counters that it last shipped an iRock on February 24, 2016, and has not shipped any since receipt of the complaint. R. 16 at 8; R. 16-5 ¶ 4, 6. Defendant says it isolated its remaining inventory of iRock's, and any sale of the product after February 24, 2016 occurred due to Amazon reselling the earlier-shipped product. R. 16-5 ¶¶ 6-13. Plaintiff argues that, absent sales invoices or records, it cannot verify if Defendant continued to sell its infringing product post-complaint. R. 21-1 ¶ 13.

Defendant's sworn declaration stating that it has not sold the infringing product since Plaintiff filed the complaint is an insufficient basis on which the Court may enter summary judgment on this issue. Plaintiff has raised a disputed issue of fact on this question by submitting a sworn declaration stating that the infringing product was purchased on Amazon.com three months after Defendant claimed to have stopped selling the infringing product. Although Defendant argues that it shipped the product in question to Amazon prior to receipt of Plaintiff's

complaint, Plaintiff's declaration is sufficient to raise a disputed fact issue requiring denial of Defendant's summary judgment motion at this time.

C. **WHETHER PLAINTIFF IS ENTITLED TO AN INJUNCTION**

Defendant has submitted a declaration stating that it has discontinued all sales of the infringing product and agrees not to sell the infringing product in the future. While Plaintiff "must show some cognizable danger of recurrent violation" to obtain an injunction, *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990), "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952). As previously noted, there are disputed factual issues regarding whether Defendant in fact has ceased the infringement at all, but, in any event, even if it has ceased infringement, that assertion is not a sufficient basis to deny injunctive relief. *See Commodities Futures Trading Comm'n v. Commodities Fluctuations Sys., Inc.*, 583 F. Supp. 1382, 1385 (S.D.N.Y. 1984) ("mere cessation of the illegal activity is an insufficient basis for denying statutory injunctive relief"). Moreover, even assuming Defendant no longer sells the infringing product, it did not cease doing so until *after* the complaint was filed. And, Defendant's declaration does not explicitly promise to refrain from selling its infringing product ever again. Instead, it asserts that Defendant "has no intention" of doing so. R. 16-4 at 3 (¶ 14).

Defendant asserts that the "Court has already informed McAfee that a sworn

declaration is sufficient protection against McAfee's alleged concern that Ashley may resume infringement in the future." R. 22 at 5. Defendant does not cite to any part of the record to support this assertion. But even if the Court made such a ruling, it is no longer controlling in light of Plaintiff's evidence regarding the possibility of additional infringing sales being made post-filing of the complaint. Relevant to the showing Plaintiff is required to make regarding the existence of a cognizable danger of recurrent violation is "'the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.'" *Wilk*, 895 F.2d at 367 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Plaintiff's response to Defendant's summary judgment motion raises a factual issue on at least the issue of the bona fides of Defendant's expressed intent to comply. Therefore, the Court finds there are disputed fact issues regarding whether Plaintiff is entitled to an injunction.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment, R. 16, is denied without prejudice. Defendant has not presented sufficient evidence to meet its burden under Rule 56 of the Federal Rules of Civil Procedure of proving a prima facie case that it is entitled to judgment as a matter of law on the issues raised in its motion. The Court informed counsel that the previously scheduled status hearing, as well as the hearing on Plaintiff's Motion to Compel, R. 23, both of which were scheduled for July 29, 2016, have been vacated pending the issuance of this ruling. A new status and motion hearing is now scheduled for Wednesday,

August 3, 2016, at 9:00 a.m. The parties should be prepared to discuss at that time what progress has been made in discovery and what additional discovery is needed to address the outstanding issues in the case, as indicated in this opinion.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: July 29, 2016